NELSON MULLINS RILEY & SCARBOROUGH LLP
RYAN E. COSGROVE, State Bar No. 277907
*ryan.cosgrove@nelsonmullins.com*
19191 South Vermont Avenue, Suite 900
Torrance, CA  90502
Telephone: 424.221.7400
Facsimile: 424.221.7499

REICKER, PFAU, PYLE & McROY LLP
MEGHAN K WOODSOME, State Bar No. 272459
*mwoodsome@rppmh.com*
1421 State Street, Suite B
Santa Barbara, CA 93101
Telephone: 805.966.2440
Fax: 805.966.3320

Attorneys for Plaintiff,
THE ARMAND HAMMER FOUNDATION, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ARMAND HAMMER FOUNDATION, INC., a Florida Not For Profit Corporation, <br><br> Plaintiff, <br><br> v. <br><br> HAMMER INTERNATIONAL FOUNDATION, a Cayman Islands Association Not For Profit, <br><br> Defendant. | Case No. <br><br> **PLAINTIFF THE ARMAND HAMMER FOUNDATION, INC.'S COMPLAINT FOR (1) CONVERSION; (2) QUIET TITLE; AND (3) DECLARATORY RELIEF** |

Plaintiff The Armand Hammer Foundation, Inc. ("AHF") alleges as follows:

### PARTIES

1.      Plaintiff The Armand Hammer Foundation, Inc. ("AHF"), is a Florida Not For Profit Corporation with its principal place of business located at 3501 Via Real, Carpinteria, California in the County of Santa Barbara ("California Foundation Office"). AHF is therefore a citizen of Florida and California.

2.     Hammer International Foundation ("HIF" or "Defendant") is an Association Not For Profit incorporated and with its principal place of business in the Cayman Islands. HIF is therefore a citizen of the Cayman Islands.

3.     AHF is informed and believes, and based thereon alleges that HIF purports to be registered to do business and have its principal place of business in the United States in Broward County, Florida. AHF disputes HIF's status and purported board composition. HIF's principal place of business is not in Florida, but in the Cayman Islands.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interests and costs, and diversity of citizenship exists between AHF (a citizen of Florida and California) and HIF (a citizen of the Cayman Islands).

5.     This Court has personal jurisdiction over HIF because AHF's claims against HIF arise in whole or in part out of HIF's California contacts and conduct occurring in or directed towards California, including by purportedly executing agreements discussed below.

6.     Venue is proper in this district because: (a) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district; (b) the majority if not all of the tangible property at issue in this lawsuit is or was located in this district; and (c) the real property at issue in this lawsuit is located in this district.

## GENERAL ALLEGATIONS

7.     Before November 20, 2022, AHF's Board of Directors ("Board") had six members: Michael A. Hammer, Viktor A. Hammer, Jim D. Fraser, Pete Sansone, Misty Hammer, and Rex Alexander.

8.     Viktor Hammer is the younger of Michael Hammer's two sons.

9.     Misty Hammer is Michael Hammer's second wife. They married in 2017.

10.    Misty Hammer became an AHF Board member in April 2022.

11.    Alexander was AHF's Secretary.

12.    Beginning in April 2022, Mark Alfano was AHF's Treasurer.

13.    On November 20, 2022, Michael Hammer passed away from cancer, leaving only five remaining Board members.

**A. Termination and Lock-Out of Dave Smith.**

14.    A true and accurate copy of the Declaration of David Smith is attached hereto as **Exhibit 1.**

15.    Plaintiff is informed and believes, and based thereon alleges that on November 1, 2022, Alexander, without approval by the Board, unilaterally informed Dave Smith that he would be terminated effective December 31, 2022, the Chief Administrator and Head of Security for AHF.

16.    Dave Smith had served in the role of Chief Administrator and Head of Security for AHF for over fifteen years.

17.    On information and belief, Smith arrived at the California Foundation Office on November 2, 2022 to find that the locks had been changed and he could not access the building.

18.    On information and belief, Alfano and Alexander also revoked Smith's access to AHF's electronic systems around that same time.

**B. Unauthorized Transfer of California Foundation Office.**

19.    Alfano and Alexander executed a quitclaim deed dated October 27, 2022 purporting to transfer the California Foundation Office to HIF ("Quitclaim Deed").

20.    A true and accurate copy of the purported Quitclaim Deed that was filed with the Santa Barbara County Recorder ("Recorder") is attached as **Exhibit 2.**

21.    Alexander signed the Quitclaim Deed as the "Chairman/Secretary" of AHF.

22.    Alexander, however, was not AHF's Chairman.

23.    Alexander was elected "Chairman of Meeting" for an April 25, 2022

AHF Board meeting.

24.     The minutes for the April 25, 2022 AHF Board meeting reflect that he was elected as nothing more than the "Chairman of Meeting."

25.     The AHF Board never elected Alexander as permanent Chairman of the Board.

26.     At a January 6, 2023 hearing in the United States Federal District Court for the Central District of California (the "District Court"), Defendants estimated that the California Foundation Office was likely valued in the "high seven digits" between $7 million and $8 million. A copy of the transcript of that hearing is attached as **Exhibit 3**.

27.     Jeff Katofsky submitted the Quitclaim Deed to the Recorder to be recorded.

28.     Katofsky also claims to be a director of HIF as of November 1, 2022.

29.     Approval pursuant to Section 5.22 of AHF's Bylaws, governing Director Conflicts of Interest, was not obtained in connection with the Quitclaim Deed.

30.     Neither Alfano nor Alexander notified the AHF Board that they intended to execute the Quitclaim Deed or otherwise dispose of or transfer ownership to the California Foundation Office.

31.     The AHF Board did not approve, or have knowledge of, the purported transfer of AHF's real property.

32.     Neither Alfano nor Alexander had AHF's authority to execute the Quitclaim Deed.

33.     Because neither Alfano nor Alexander had AHF's authority to execute the Quitclaim Deed, the purported transfer of the California Foundation Office is ineffective, voidable, or void.

### C. Unauthorized Transfer of AHF's Fine Art.

34.     Alexander and Misty Hammer purported to execute an "Art Transfer Agreement" dated October 27, 2022 that purported to transfer title to 32 pieces of

priceless art from AHF to HIF.

35.     A true and accurate copy of the Art Transfer Agreement is attached as **Exhibit 4.**

36.     At the January 6, 2023 hearing in the Central District Court, Defendants estimated that just 8 of those 32 pieces would be worth between $60 million and $80 million.

37.     Neither Alexander nor Misty Hammer notified the AHF Board that they intended to transfer AHF art to another entity.

38.     Neither Alexander nor Misty Hammer sought AHF Board approval to transfer AHF art to another entity.

39.     Both Alexander and Misty Hammer claim to have been an officer or director of HIF at the time that the Art Transfer Agreement was executed.

40.     At the time she executed the Art Transfer Agreement on behalf of HIF, Misty Hammer purported to be both an officer of HIF and a director of AHF.

41.     Approval pursuant to Section 5.22 of the Bylaws, governing Director Conflicts of Interest, was not obtained in connection with the Art Transfer Agreement.

42.     The Board did not approve, or have knowledge of, any purported transfer of AHF's art to HIF.

43.     Neither Alexander nor Misty Hammer had AHF's authority to execute the Art Transfer Agreement.

44.     Because neither Alexander nor Misty Hammer had AHF's authority to execute the Art Transfer Agreement, the Art Transfer Agreement is ineffective, voidable, or void.

45.     Neither Alexander nor Misty Hammer had HIF's authority to execute the Art Transfer Agreement.

46.     Because neither Alexander nor Misty Hammer had AHF's authority to execute the Art Transfer Agreement, the purported transfer of the AHF art to HIF is ineffective, voidable, or void.

### D. <u>Unauthorized Bill of Sale.</u>

47.     Alexander, purporting to act as Chairman and on behalf of AHF, on the one hand, and Misty Hammer purporting to act as President and Chairman and on behalf of HIF, on the other hand, executed a "Bill of Sale and Assignment" dated November 1, 2022 ("Bill of Sale").

48.     A true and accurate copy of the Bill of Sale is attached as **Exhibit 5**.

49.     The Bill of Sale attempted to transfer virtually all AHF assets to HIF for $10.00.

50.     Neither Alexander nor Misty Hammer notified the AHF Board that they intended transfer AHF assets, artwork, or other property to another entity.

51.     The Board did not approve, or have knowledge of, the purported transfer of assets, artwork, or any other property from AHF to HIF.

52.     At least one member of AHF's Board claims to have been an officer or director of HIF at the time that the Bill of Sale was executed.

53.     At the time she executed the Bill of Sale on behalf of HIF, Misty Hammer purported to be both an officer of HIF and a director of AHF.

54.     Approval pursuant to Section 5.22 of the Bylaws, governing Director Conflicts of Interest, was not obtained in connection with the Bill of Sale.

55.     Neither Alexander nor Misty Hammer had AHF's authority to execute the Bill of Sale.

56.     Because neither Alexander nor Misty Hammer had AHF's authority to execute the Bill of Sale, that Bill of Sale is ineffective, voidable, or void.

57.     Neither Alexander nor Misty Hammer had HIF's authority to execute the Bill of Sale.

58.     Because neither Alexander nor Misty Hammer had HIF's authority to execute the Bill of Sale, that Bill of Sale is ineffective, voidable, or void.

### E. <u>HIF's Interference with AHF Accounts.</u>

59.     On February 16, 2023, for the first time, AHF was informed by counsel

for Morgan Stanley Smith Barney LLC that HIF claims the funds in AHF's Morgan Stanley account.

60.     Attached as **Exhibit 6** is a true and correct copy of an email from Jeff Katofsky, who purports to be a HIF Board Member, stating that HIF objects to AHF's use of funds in AHF's account.

61.     As a result of HIF's interference, AHF cannot access these funds to pay its employee, its insurance, its lawyers, its accountants, and its taxes.

### F.  Misty Hammer, Alfano, and Alexander's Secret Attempts to Try and Take Control of HIF While Trying to Transfer All of AHF's Assets to HIF.

62.     On or about November 3, 2022, a purported application to conduct business in Florida was filed with Florida's Division of Corporations on behalf of HIF ("HIF Florida Registration").

63.     A true and accurate copy of the purported HIF Florida Registration is attached as **Exhibit 7**.

64.     The HIF Florida Registration lists Alexander as Director, Vice President, and Secretary of HIF; Misty Hammer as Director, Chairman, and President of HIF; and Alfano, Katofsky, Michael Hammer, Samuel I Ltd, and Raisha Park as Directors for HIF.

65.     Rex Alexander signed the Florida Registration.

66.     Rex Alexander did not have authority to sign the Florida Registration.

67.     Before the Florida Registration was submitted, Michael Hammer and Samuel I Ltd were the sole Directors of HIF, and Michael Hammer was CEO and President.

68.     AHF is the sole member of HIF.

69.     The November 3, 2022 application was filed without notice to AHF's Board, and without approval from AHF as HIF's sole member.

70.     Defendants claim that, at a purported Special Meeting of HIF's Board on

September 16, 2022, the following actions were allegedly taken:

    a.  Michael Hammer allegedly "appointed Rex Alexander . . . as Michael Hammer's indefinite proxy director for HIF";

    b.  Michael Hammer allegedly made Rex Alexander and Mark Alfano Directors of HIF; and

    c.  HIF's Board allegedly appointed Misty Hammer as HIF's President and Chair, Rex Alexander as HIF's Vice President and Secretary, and Mark Alfano as HIF's Treasurer.

71.    The alleged actions described in Paragraph 70 were taken without notice to AHF's Board, and without approval from AHF as HIF's sole member.

72.    The alleged actions described in Paragraph 70 were thus invalid.

73.    Plaintiff is informed and believes, and based thereon alleges that Defendants claim that on November 1, 2022, HIF purported to hold a meeting of its Members and Directors, during which:

    a.  HIF's Board allegedly elected Alexander (as an alternate proxy for Michael Hammer), Alfano (as President of Samuel I, Ltd), Jeff Katofsky, Alfano (individually), Alexander (individually), Misty Hammer, and Rashia Park to the HIF Board;

    b.  HIF's Board allegedly affirmed that Viktor Hammer, Fraser, and Sansone would join HIF's Board upon completion of a merger between AHF-HIF;

    c.  HIF's Board allegedly appointed Misty Hammer as HIF's President and Chairman, Alexander as HIF's Secretary and Vice President, and Alfano as HIF's Treasurer; and

    d.  HIF allegedly increased its membership from one (AHF) to five, adding Jeff Katofsky, Alfano, Alexander, and Misty Hammer as members of HIF.

74.    The alleged actions described in Paragraph 73 were taken without notice

to AHF's Board, and without approval from AHF as HIF's sole member.

75.     The alleged actions described in Paragraph 73 were thus invalid.

**e.   <u>The Merger Agreement.</u>**

76.     Defendants contend their actions purporting to transfer AHF's assets, artworks, and real property to HIF were done to effectuate a merger agreement which was to merge a predecessor of AHF, The Armand Hammer Foundation, Inc. that was previously organized under the laws of the State of California ("AHF-California") into HIF on December 31, 2017 ("2017 Merger Agreement").

77.     A true and accurate copy of the 2017 Merger Agreement between AHF-California and HIF is attached as **Exhibit 8**.

78.     Paragraph 2 of the Merger Agreement states that: "Effective at midnight December 31, 2017 all of the assets of Merging Corporation shall be transferred to Surviving Corporation and all of the tax attributes and liabilities of Merging Corporation shall inure to and be assumed by Surviving Corporation. Merging Corporation shall assign and transfer to Surviving Corporation the name 'The Armand Hammer Foundation' and all rights to the use of the name including derivatives of the name."

79.     The Merger Agreement also provides as follows: "Notice of this merger will be submitted to the California attorney general at least 20 days prior to its effective date and such other steps will be taken as prescribed by the laws of the State of California and the Cayman Islands."

80.     Plaintiff is informed and believes, and based thereon alleges that The California Attorney General blocked the merger contemplated by the 2017 Merger Agreement.

81.     No merger between AHF-California and HIF took place at midnight December 31, 2017.

82.     No merger between AHF-California and HIF took place at any time in 2017.

83.  No merger between AHF-California and HIF took place at any time in 2018.

84.  No merger between AHF-California and HIF took place at any time in 2019.

85.  No merger between AHF-California and HIF took place at any time in 2020.

86.  No merger between AHF-California and HIF took place at any time in 2021.

87.  No merger between AHF-California and HIF took place at any time in 2022.

88.  No merger between AHF-California and HIF ever took place.

89.  No merger between AHF-California and HIF took place consistent with the terms of the Merger Agreement.

90.  The 2017 Merger Agreement was not enforceable in 2022.

91.  The AHF Board never voted on a merger between AHF-California and HIF.

92.  The AHF Board never passed a resolution with regard to a merger between AHF-California and HIF.

93.  Instead, as reflected in the December 4, 2017 Meeting Minutes for AHF-California, "[e]ach Board member" simply "acknowledged that he had received and reviewed a copy of The Armand Hammer Foundation Agreement Merger."

94.  As the Secretary of AHF-California, Alexander prepared the December 4, 2017 Meeting Minutes.

95.  A copy of the December 4, 2017 Meeting Minutes, as filed by Alexander, is attached hereto as **Exhibit 9**.

96.  Alexander signed the December 4, 2017 Meeting Minutes.

97.  The Merger Agreement did not authorize a merger between AHF and HIF.

98.   The Merger Agreement only authorized a merger to take place on December 31, 2017.

99.   The Merger Agreement only authorized a merger between an entity that no longer exists (AHF-California) and HIF.

100.   No merger agreement between AHF and HIF exists.

101.   The Board never voted to approve a merger between AHF and HIF.

102.   AHF-California ceased to exist on December 29, 2020, when that California-incorporated entity merged into AHF, which is incorporated in Florida.

103.   A true and accurate copy of the Articles of Merger between the AHF-California and the Florida AHF entity is attached as **Exhibit 10** ("Articles of Merger").

104.   The Articles of Merger makes no mention whatsoever of HIF.

105.   The Minutes for the November 18, 2020 AHF-California Board Meeting make no mention of an HIF merger.

106.   Instead, the justification for the Florida merger articulated in the November 18, 2020 AHF-California Board Meeting Minutes was "that with Michael Hammer having moved out of California and no officers or directors currently living in California, it made little sense to continue California as the Foundation's legal situs."

107.   The November 18, 2020 AHF-California Board Meeting Minutes go on to state that "this Florida location works great for Mr. Hammer since his primary residence has become the Cayman Islands and Florida is the natural and efficient location for him to travel back to the United States for the work of the Foundation, substantially reducing travel time and costs."

108.   As the Secretary of AHF-California, Rex Alexander prepared the November 18, 2020 Meeting Minutes.

109.   Rex Alexander signed the November 18, 2020 Meeting Minutes.

110.   A true and accurate copy of the November 18, 2020 Meeting Minutes

-11-

1   are attached as **Exhibit 11**.

2   111.   At no point in 2022 did Rex Alexander, Misty Hammer, Mark Alfano,

3   or Jeff Katofsky inform the full AHF Board of Directors, nor did any of those

4   individuals inform Viktor Hammer, Pete Sansone, or Jim Fraser, that any of them

5   were transferring, or intending to transfer, AHF assets, artworks, and real property to

6   HIF to effect the 2017 Merger Agreement.

7   **G. Prior Proceedings in this Court.**

8   112.   AHF filed an earlier action against Rex Alexander, Misty Hammer, and

9   Mark Alfano in Santa Barbara Superior Court. That case is styled *The Hammer*

10  *Foundation, Inc. v. Rex K. Alexander, Misty Hammer, and Mark Alfano, and Bull*

11  *Canyon, Inc.*, Case Number 22CV04810.

12  113.   Jeff Katofsky represents Alexander, Misty Hammer, and Mark Alfano in

13  Santa Barbara Superior Court.

14  114.   AHF sought to add HIF as party to that action on an expedited basis, and

15  Rex Alexander and Misty Hammer opposed AHF's attempts to amend the complaint

16  to add HIF.

17  115.   Rex Alexander and Misty Hammer refused to stipulate to an amended

18  complaint naming HIF.

19  116.   Alexander at one point attempted to remove that action to the District

20  Court. It was later remanded.

21  117.   On December 21, 2022, AHF filed an ex parte application for a

22  temporary restraining order against Rex Alexander, Misty Hammer, and Mark Alfano

23  in the District Court.

24  118.   On December 22, 2022, counsel for Rex Alexander filed a two-page

25  submission urging the District Court to delay consideration of AHF's ex parte

26  application until after the District Court had decided on AHF's pending motion to

27  remand and raising other objections as to timing and status of service.

28  119.   The December 22 submission did not assert the position that many, if not

all, of the AHF assets at issue in the ex parte application and underlying complaint had been transferred to another entity.

120. On December 27, 2022, the District Court issued a temporary restraining order against Defendants ("December 27 TRO").

121. A true and accurate copy of the December 27 TRO is attached as **Exhibit 12**.

122. The December 27 Order held that Plaintiff met all four of the factors set forth *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

123. Specifically, the December 27 TRO stated that:

    a. "Plaintiff has demonstrated a likelihood of success on the merits of at least some of its claims."

    b. "[T]he harm Plaintiff would suffer if the Application were denied and Defendants Alexander, Misty Hammer, and Alfano were allowed to maintain control of AHF would be substantial."

    c. "Plaintiff is likely to suffer irreparable harm if a temporary restraining order is not granted."

    d. And "the balance of the hardships tips in Plaintiff's favor and that a temporary injunction against Defendants is in the public interest."

124. The District Court then ordered that:

> Defendants, their officers, principals, agents, employees, associates, attorneys, and all persons acting by, through, or in concert with any of them, are temporarily ENJOINED from (1) controlling, purporting to act on behalf of, and interfering with Plaintiff The Armand Hammer Foundation, Inc. or its assets or property; (2) entering or accessing the offices and real property of Plaintiff Armand Hammer Foundation, Inc.; (3) accessing, transferring, or moving Plaintiff The Armand Hammer Foundation, Inc.'s assets or property; and (4) prohibiting or interfering with Plaintiff The Armand Hammer Foundation, Inc., Viktor Hammer, Jim Fraser, Pete Sansone, and their authorized agents and representatives' entry or access to Plaintiff's offices and real property, including the executive office located at 3501

Via Real, Carpinteria, California.

125.   Upon receiving notice that the District Court had issued the December 27 TRO, counsel for AHF sent Jeff Katofsky an email containing the following text: "In light of today's court order, Mike McGrew—as an authorized representative of The Armand Hammer Foundation, Inc., Viktor Hammer, Jim Fraser, and Pete Sansone—is on his way to the Foundation office and will secure the premises. We trust that all parties will abide by the order and nobody will interfere or deny him access. Please let us know if you have any questions. Thank you very much."

126.   Within one hour of AHF's transmission of the above email, Jeff Katofsky sent the following response:  "As the building is not an asset of the Armand Hammer Foundation, Inc., any attempts by Mr. McGrew to enter the premises will be trespassing and will be dealt with accordingly."

127.   That same day, AHF counsel responded with an email containing the following text:  "Your clients had the opportunity to make any arguments it wished to make in opposition to AHF's Motion for TRO.  Any effort to thwart the Court's order of today, including access to the Foundation premises, will be subject to an appropriate Motion for sanctions and contempt and will be dealt with accordingly."

128.   That same day, Jeff Katofsky responded with an email containing the following text:  "My client has every intention of complying with the Court's order and shall do so.  The building that Mr. McGrew just attempted to break into is not subject to that order.  As I told you in our one phone call, I have no intention of litigating by email."

129.   That same day, AHF counsel send Jeff Katofsky an email containing the following text:  "Thank you for your email. The Court's Order specifically references the building located at 3501 Via Real in Carpinteria, California. It enjoins 'defendants and their officers, principals, agents, employees, associates, attorneys, and all persons acting by, through, or in concert with any of them' from 'prohibiting or interfering

with Plaintiff The Armand Hammer Foundation, Inc., Viktor Hammer, Jim Fraser, Pete Sansone, and their authorized agents and representatives' entry or access to Plaintiff's offices and real property, including the executive office located at 3501 Via Real, Carpinteria, California.['] *Can you please explain your remark that the building 'is not subject to that order'?  Thank you very much.*"  (emphasis added).

130.   Jeff Katofsky never responded to the final email referenced above.

131.   Jeff Katofsky did not at that time convey to AHF counsel an assertion that the California Foundation Office had been purportedly transferred to HIF.

132.   In investigating Jeff Katofsky's cryptic claims that the California Foundation Office was not subject to the December 27 TRO, AHF discovered the Quitclaim Deed for the first time.

133.   On January 6, 2023, the District Court held a two-hour hearing on its issuance of an order to show cause as to why a preliminary injunction should not be issued against Defendants following the December 27 TRO.

134.   It was in Alexander's opposition papers that, for the first time, AHF learned that Rex Alexander, Misty Hammer, Mark Alfano, and Jeff Katofsky contend their actions purporting to transfer AHF's assets, artworks, and real property to HIF were done to purportedly effectuate the 2017 Merger Agreement.

135.   On January 10, 2023, the District Court extended the December 27 TRO by an additional fourteen days ("January 10 Order").

136.   A true and accurate copy of the January 10 Order is attached as **Exhibit 13**.

137.   The January 10 Order also enlarged the scope of the temporary restraining order, ordering that:

> Defendants, their officers, principals, agents, employees, associates, attorneys, and all persons acting by, through, or in concert with any of them, are temporarily ENJOINED from: (1) controlling, purporting to act on behalf of, and interfering with Plaintiff The Armand Hammer Foundation, Inc. or its assets or property; (2) entering or accessing the offices and real property of

Plaintiff The Armand Hammer Foundation, Inc., including the real property located at 3501 Via Real, Carpinteria, California, except with permission from and 24-hour notice to Plaintiff The Armand Hammer Foundation, Inc., Viktor Hammer, Jim Fraser, Pete Sansone, and their authorized agents and representatives; (3) prohibiting or interfering with Plaintiff The Armand Hammer Foundation, Inc., Viktor Hammer, Jim Fraser, Pete Sansone, and their authorized agents and representatives' entry or access to Plaintiff's offices and real property, including the executive office located at 3501 Via Real, Carpinteria, California; (4) accessing, transferring, or moving Plaintiff The Armand Hammer Foundation, Inc.'s assets or property, regardless of where they are physically located; (5) moving, transferring, selling, or secreting any of the assets and real property that were purportedly transferred from Plaintiff The Armand Hammer Foundation, Inc., on or after July 1, 2022, to The Hammer International Foundation, Inc. or any other entity or person; (6) preventing Plaintiff The Armand Hammer Foundation, Inc., Viktor Hammer, Jim Fraser, Pete Sansone, and their authorized agents and representatives' entry or access to Plaintiff's records, accounts, electronic databases, and e-mail systems (including all e-mail accounts currently or previously used by Plaintiff and its employees and contractors during their employment)—regardless of where those records, documents, and electronic files may physically or electronically be located or which entity may own the computer servers and systems on which such records, documents, and electronic files reside; and (7) deleting any information, records, documents, messages, or e-mails from any records, accounts, electronic databases, and e-mail systems (including all e-mail accounts currently or previously used by Plaintiff and its employees and contractors during their employment)—regardless of where those documents may physically or electronically be located or which entity may own the computer servers and systems on which such records reside.

138. The January 10 Order further required that:

Defendants shall provide Plaintiff, Viktor Hammer, Jim Fraser, and Pete Sansone, and their authorized agents and representatives, access, passwords, and administrator rights to all AHF bank accounts, computers, electronic databases, and e-mail systems (including all e-mail accounts used by Plaintiff's officers, employees, and contractors within their scope of employment or contract with Plaintiff), within seven (7) days of this Order. Defendants need not provide access, passwords, or administrator rights to bank accounts, computers, electronic databases, and email systems that were also in the name of and used to conduct business on behalf of other entities, including the Hammer International Foundation, Inc. However, Defendants shall specifically identify within seven (7) days of this Order all bank accounts, computers,

electronic databases, and e-mail systems whose access, passwords, or administrator rights they are withholding, and shall meet and confer with Plaintiff within fourteen (14) days of this Order regarding providing Plaintiff and its representatives with access to and/or a copy of all records, information, documents, and e-mails that involve, concern, or discuss Plaintiff, its assets, or its operations.

139.   Misty Hammer, Alexander, and Alfano never requested to retrieve any personal items from the AHF office.

140.   On January 13, 2023, the District Court entered an order granting AHF's Motion to Remand for lack of diversity jurisdiction. The case was remanded to the Santa Barbara Superior Court on January 24, 2023.

141.   On January 25, 2023, AHF and Rex Alexander, Misty Hammer, and Mark Alfano, by and through their respective counsel, stipulated in Santa Barbara Superior Court that Rex Alexander, Mark Alfano, and Misty Hammer are no longer officers or directors of AHF ("January 25 Stipulation").

142.   The January 25 Stipulation was agreed to and filed in Santa Barbara Superior Court on January 25, 2023.

143.   A true and accurate copy of the January 25 Stipulation is attached as **Exhibit 14**.

144.   On information and belief, HIF is seeking, or sought, to get a loan secured by the AHF Carpinteria property.

## FIRST CAUSE OF ACTION

### (Conversion)

145.   AHF incorporates herein by this reference each of the allegations contained in Paragraphs 1 through 144 above of this Complaint as if set forth in full herein.

146.   AHF's assets and property were improperly and without authorization transferred to HIF under a Quitclaim Deed, Art Transfer Agreement, and Bill of Sale, all of which are ineffective, voidable, or void.

147.   HIF wrongfully exercised, and continues to wrongfully exercise, dominion over assets and property—including valuable artworks and AHF's banks account—that rightfully belong to AHF and denied AHF of its rights and use of the assets and property.

148.   HIF wrongfully seeks to deny AHF access to its account with Morgan Stanley Smith Barney LLC.

149.   HIF's actions described herein constitute conversion.

150.   As a result of HIF's conversion of assets and property belonging to AHF, AHF has sustained damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### (Quiet Title)

151.   AHF incorporates herein by this reference each of the allegations contained in Paragraphs 1 through 150 above of this Complaint as if set forth in full herein.

152.   The subject property is located at 3501 Via Real, Carpinteria, California 93013 ("Property"), and is legally described in Exhibit "A" to the Quitclaim Deed, attached hereto as **Exhibit 15**.

153.   The Quitclaim Deed purporting to transfer the Property to HIF was unlawfully executed by Alexander and Alfano without AHF's approval, knowledge, or authorization. Additionally, Alexander and Alfano did not have either express or implicit authority to act on AHF's behalf when they executed the Quitclaim Deed.

154.   Because Alexander and Alfano lacked authority to execute or record the Quitclaim Deed, that Quitclaim Deed is invalid.

155.   AHF is entitled to a judicial declaration that AHF is the sole owner of the Property because a quitclaim deed purporting to transfer the Property to HIF was unlawfully executed without AHF's authorization and by individuals who did not have authority to bind AHF.

156.   Accordingly, AHF seeks to a judgment quieting its title to the Property

in AHF's name alone as of October 27, 2022, the date on which the Quitclaim Deed was executed.

## THIRD CAUSE OF ACTION

### (Declaratory Relief)

157.   AHF incorporates herein by this reference each of the allegations contained in Paragraphs 1 through 156 above of this Complaint as if set forth in full herein.

158.   Under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), an actual controversy exists between AHF and HIF regarding the validity of the Quitclaim Deed, the Art Transfer Agreement, and the Bill of Sale.

159.   Under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), an actual controversy exists between AHF and HIF regarding AHF's account with Morgan Stanley Smith Barney LLC.

160.   An actual controversy also exists among AHF and HIF regarding the continued effect of the Merger Agreement.

161.    AHF therefore seeks the following declarations:

    a.  That the real property, artworks, and assets of AHF were not validly transferred to HIF.

    b.  That the purported Quitclaim Deed is invalid.

    c.  That the purported Art Transfer Agreement is invalid.

    d.  That the purported Bill of Sale is invalid.

    e.  That AHF has sole control and ownership over AHF bank accounts, assets, artworks, and property, purportedly transferred to HIF.

    f.  That HIF has no right or authority to block or deny AHF access to AHF bank accounts.

    g.  That AHF has full authority to access and use AHF bank accounts.

    h.  That the 2017 Merger Agreement has no further force and effect.

## FOURTH CAUSE OF ACTION

**(Unjust Enrichment)**

162.   AHF incorporates herein by this reference each of the allegations contained in Paragraphs 1 through 161 above of this Complaint as if set forth in full herein.

163.   AHF's assets and property were improperly and without authorization transferred to HIF under a Quitclaim Deed, Art Transfer Agreement, and Bill of Sale, all of which are ineffective, voidable, or void.

164.   HIF wrongfully benefitted from, and continues to wrongfully benefit from, the purported transfer of valuable artworks, property, and real property— and denial of AHF's bank accounts—that rightfully belong to AHF and denied AHF of its rights and use of the assets and property.

165.   HIF is not entitled in equity and good conscience to benefit from the above-described acts.

166.   Thus, HIF is obligated to make restitution to AHF for the valuable artworks, property, and real property that it has received, retained, or appropriated.

## **PRAYER**

WHEREFORE, AHF prays for the Court to enter judgment as follows:

1.   That the Court award damages and restitution to AHF in an amount to be determined at trial arising from the conduct alleged in the First, Second, and Fourth Causes of Action of this Complaint;

2.   That the Court issue a Temporary Restraining Order and Preliminary Injunction that:

    a.   Prohibits HIF and its agents and representatives from

        i.   seeking or attempting to enter, access, control, or interfere with AHF or any assets, accounts (including bank counts, email accounts, or other digital accounts), or property allegedly belonging to AHF or that Defendants contend was transferred from AHF to HIF pursuant to the Merger

Agreement, the Quit Claim Deed, the Art Transfer Agreement, the Bill of Sale, or otherwise

    ii.    transferring, moving, or disposing of AHF assets or property or any assets or property belonging to AHF or that Defendants contend was transferred from AHF to HIF pursuant to the Merger Agreement, the Quit Claim Deed, the Art Transfer Agreement, the Bill of Sale, or otherwise;

    b.    Allows AHF

        i.    access to and control of all AHF accounts (including financial accounts) and;

        ii.    access to and control of assets and property belonging to AHF that Defendants contend was transferred from AHF to HIF pursuant to the Merger Agreement, the Quit Claim Deed, the Art Transfer Agreement, the Bill of Sale, or otherwise; and

    c.    Requires HIF

        i.    to return all AHF artworks and all other AHF property and assets recently transferred, moved, or otherwise taken by Defendants pursuant to the Merger Agreement, the Quit Claim Deed, the Art Transfer Agreement, the Bill of Sale, or otherwise; or, in the alternative, (ii) provide and inventory of all AHF and HIF property and to take steps to secure all AHF property and any assets or property belonging to AHF or that Defendants contend was transferred from AHF to HIF pursuant to the Merger Agreement, the Quit Claim Deed, the Art Transfer Agreement, the Bill of Sale, or otherwise

3.    That the Court issue a Permanent Injunction that:

      a.    Prohibits HIF from:

         i.  seeking or attempting to enter, access, control, or interfere with AHF or its assets, accounts (including bank accounts, email accounts, or other digital accounts), or property;

        ii.  accessing, transferring, or moving AHF assets or property or any assets or property belonging to AHF or that HIF contend was transferred from AHF to HIF;

4. That the Court issue declaratory judgments:

      a.    That the real property, artworks, and assets of AHF were not validly transferred to HIF;

      b.    That the purported Quitclaim Deed is invalid;

      c.    That the purported Art Transfer Agreement is invalid;

      d.    That the purported Bill of Sale is invalid;

      e.    That AHF has sole control and ownership over AHF bank accounts, assets, artworks, and property, purportedly transferred to HIF;

      f.    That HIF has no right or authority to block or deny AHF access to AHF bank accounts;

      g.    That AHF has full authority to access and use AHF bank accounts; and

      h.    That the 2017 Merger Agreement has no further force and effect.

5. That the Court issue any other declarations or judgments in favor of AHF as may be necessary and proper;

6. That the Court issue an order quieting title to the real property housing the California Foundation Office;

7. That the Court award pre- and post-judgment interest as allowed by law;

8. For the Court award AHF its costs of suit, and to the extend authorized, reasonable attorneys' fees incurred in the prosecution of this action; and

9.    For such other and further relief, including equitable relief, as the Court deems just and proper.

DATED:  February 17, 2023          NELSON MULLINS RILEY &
                                   SCARBOROUGH LLP


                            By:  */s/ Ryan E. Cosgrove*
                                   RYAN E. COSGROVE
                                   Attorneys for Plaintiff
                                   THE ARMAND HAMMER
                                   FOUNDATION, INC

1

## VERIFICATION

2

    I am the Chairman, a member of the Board of Directors, and President of The Armand Hammer

3

Foundation, Inc. I have read THE ARMAND HAMMER FOUNDATION'S COMPLAINT attached

4

hereto. Under penalty of perjury of the laws of the United States of America, I verify that the

5

allegations contained in THE ARMAND HAMMER FOUNDATION'S COMPLAINT are true to my

6

own knowledge, except as to those matters which are therein stated as being on information or belief,

7

and as to those matters, I believe them to be true. Executed on February 17, 2023, at

8

FRANKLIN, TN .

9

10

11

Viktor Hammer

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFIED AMENDED COMPLAINT FOR DAMAGES